Edward F. BAGDON,
Plaintiff–Appellee—Cross–Appellant,

v.

BRIDGESTONE/FIRESTONE, INC.,
Defendant–Appellant—Cross–Appellee.

Nos. 89–3724 and 89–3774.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1990.

Decided Oct. 17, 1990.

Rehearing and Rehearing En Banc
Denied Nov. 13, 1990.

Paul E. Starkman, Arnstein & Lehr, Chicago, Ill., for plaintiff-appellee—cross-appellant.

Paul W. Schroeder, Thomas F. Gardner, Cheryl L. Urbanski, Jones, Day, Reavis & Pogue, Chicago, Ill., for defendant-appellant—cross-appellee.

Before WOOD, Jr., and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.*

EASTERBROOK, Circuit Judge.

Many of the Firestone auto service stores throughout the nation have been separately incorporated. Firestone establishes corporations in which it and the store's manager own stock, using this as a device to reward the manager for success and cement the manager's loyalty to the firm. Although this may spur managers to success, it has other effects. With the corporate form come the duties of corporate law. Firestone acquired 300 auto centers from J.C. Penney Co. and operated some in competition with its existing stores. Edward F. Bagdon, the manager of a store in which he owned stock, filed this suit, contending that by reopening the Penney's store under the Firestone name, Firestone violated its duty to him and to his store-corporation. The jury agreed and awarded Bagdon $912,636, which the district judge reduced to $306,995. 1989 WL 152815, 1989 U.S. Dist. LEXIS 13968 (N.D. Ill.). Having won by invoking the rules of corporate law, Bagdon now must persuade us that this is not "really" a corporate case—for, if it is, the store-corporation is a necessary party, and the suit must be dismissed for lack of complete diversity of citizenship.

Firestone (Bridgestone/Firestone, Inc., after its acquisition by Bridgestone Corp.; we call it "Firestone" for simplicity) had some 1,200 company-owned tire and auto service stores throughout the country in 1983. Bagdon has been with Firestone since 1962; since 1970 he has managed a store in the Ford City Shopping Center on the west side of Chicago. In 1971 Bagdon and Firestone incorporated this store so that Bagdon could share in its profits. In 1983 the store (Firestone Stores of Chicago–Ford, Inc.), originally an Illinois corporation, was reincorporated in Delaware with Bagdon's consent. Bagdon owns 49% of the stock, for which he paid about $83,500. Firestone owns the other 51%.

Ford City is a big mall, with four anchor stores, including J.C. Penney, when it opened in 1965. Penney operated a large auto supply and service center adjoining its store. Penney's auto center was 700 yards east of Bagdon's Firestone store. In 1981 Penney's auto center at Ford City did $1.714 million in business; Bagdon's Firestone store had gross sales about half that level. In 1982 Penney started to pare down its auto business, closing some of its stores on the west coast. Firestone opened negotiations to buy what it could. Penney was willing to sell—but only en bloc. In early 1983 Firestone bought or leased all of Penney's auto service centers. Some were located hard by existing Firestone outlets. Ford City was one of the conflicts. Firestone held an internal debate and eventually decided that Ford City could support two Firestone stores. The former Penney center opened under the Firestone trademark on June 1, 1983. We call this "Ford City East", to distinguish it from Bagdon's "Ford City West".

Firestone has not been able to match Penney's level of sales at Ford City East. In 1984, its first full year as a Firestone store, Ford City East grossed $849,000. (We round all figures to the nearest thousand dollars.) By 1988 its sales were down to $707,000. Bagdon's store also experienced declining sales through the period. From gross sales of $824,000 in 1982, the last full year of Penney's operation of Ford City East, sales at Bagdon's store rose to $914,000 in 1984 and then slumped to $736,000 by 1988. Ford City West remained profitable, however. Bagdon's share of the store's profits was $28,000 in 1982 and $26,000 in 1988, with a high of $38,000 and a low of $14,000 in between. Bagdon also received salary and bonus from Firestone (he is employed by Firestone as well as by the store-corporation); this compensation increased from $39,000 in 1982 to $53,000 in 1988.

Bagdon filed this suit in 1987, invoking the diversity jurisdiction of 28 U.S.C. § 1332(a). He is a citizen of Illinois; in 1987 Firestone was incorporated in Ohio

* Hon. Robert A. Grant, of the Northern District of Indiana, sitting by designation.

and has its principal place of business there. Bagdon contends that had Firestone sold the former Penney store to a third party rather than operating it as an auto center, Ford City West would have picked up a substantial fraction of Penney's sales, greatly increasing Ford City West's profits—and his 49% share of them, not to mention his bonus from Firestone. Firestone moved to dismiss, contending that the store-corporation is an indispensable party because Bagdon's loss derives from injury to the corporation. Ford City West is incorporated in Delaware and has its principal place of business in Illinois. *Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957), requires the corporation to be aligned as a defendant in shareholders' derivative litigation if it opposes the suit (as the store-corporation does). Its presence as a defendant would destroy the complete diversity of citizenship that since *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), has been essential to jurisdiction under § 1332. The district judge denied this motion. 1987 WL 18353, 1987 U.S.Dist. Lexis 9395 (N.D. Ill.). Explaining why requires a quick tour through Bagdon's complaint.

■ Count I of Bagdon's complaint alleges that by establishing Ford City East in competition with Ford City West, Firestone violated the duty a controlling shareholder owes to the corporation, and derivatively to the minority investors. Diverting business from Ford City West to Ford City East reduced the store's sales, and thus its profits. This looks like a standard derivative suit, for any injury to Bagdon is mediated through the corporation: Bagdon does not lose unless Ford City West loses. *Kagan v. Edison Brothers Stores, Inc.,* 907 F.2d 690 (7th Cir.1990); *Mid–State Fertilizer Co. v. Exchange National Bank,* 877 F.2d 1333, 1335–36 (7th Cir.1989). Firestone's duty as a majority shareholder ran to the corporation, not directly to the minority investor. As the American Law Institute puts it, summarizing the theme of the cases, "An action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action." *Principles of Cor-* *porate Governance: Analysis and Recommendations* § 7.01(a) (Tent. Draft No. 8, 1988). See also Deborah A. DeMott, *Shareholder Derivative Actions: Law and Practice* § 2.01 (1987). The bulk of the jury's award in Bagdon's favor represented profits Ford City West lost because of competition from Ford City East.

Other counts in the complaint did not depend on injury to Ford City West. Count II alleges that Firestone defrauded Bagdon personally, telling him that he would be appointed to manage Ford City East or that Ford City East would be added to his store-corporation. Assurances of this kind led him to remain with Firestone, to his detriment, although he would have left had he known the truth. Count III states a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½ ¶ 262, on the theory that Ford City East engendered confusion in consumers' minds. In denying Firestone's motion to dismiss the case, the district judge observed that Counts II and III are claims personal to Bagdon, which he is entitled to pursue without involving the store-corporation. Even Count I involves some injury external to the store-corporation: Bagdon seeks to recover the diminution in the value of his bonuses, paid directly by Firestone. The district judge concluded that this suit therefore may proceed without the store-corporation, a jurisdictional spoiler.

Bagdon had claims that he could pursue without adding the corporation. Often a single series of events gives rise to both direct and derivative litigation. E.g., *Twohy v. First National Bank of Chicago,* 758 F.2d 1185, 1191–92 (7th Cir.1985); *Buschmann v. Professional Men's Ass'n,* 405 F.2d 659, 663 (7th Cir.1969). The plaintiff as master of the complaint may choose which claims to present. Had Bagdon argued only that Firestone defrauded him personally, he would have been free to proceed. Cf. *Spartech Corp. v. Opper,* 890 F.2d 949, 952–54 (7th Cir.1989). His claims were not so limited but included a demand for damages on account of the reduction in corporate profits. As things turned out, the district judge granted summary judg-

ment to Firestone on Counts II and III— Count II because the facts did not support relief, and Count III because goods that are accurately labeled (Ford City East is a real Firestone store) do not violate the statute.

Bagdon insisted on recovering profits the corporation lost. If that claim is derivative, then the corporation had to be joined. The district judge doubted this proposition, observing: "Rule 19 is to be applied pragmatically, with a focus on a realistic analysis of the facts of each case." The court noted that adding the store-corporation would defeat jurisdiction, which it was reluctant to do—especially when both of the shareholders were parties. We are inclined to look through the other end of this telescope. The question is not whether it is just to add a party that knocks a case out of federal court, but whether the court should strain to keep it in. The principal justification for the diversity jurisdiction, the potential for bias against out-of-state parties, cannot explain why Bagdon, a citizen of Illinois, wants to litigate in federal court against an out-of-state defendant. When the out-of-state party is content with the state's system of justice, the claim on the resources of the federal court is weakest. In the end, however, neither the district court's views nor ours matter much. Rule 19 is *not* "applied pragmatically" in derivative cases. If this is a derivative suit, the corporation is an indispensable party. So much has been settled since *Davenport v. Dows*, 85 U.S. (18 Wall.) 626, 21 L.Ed. 938 (1873), a decision reaffirmed after the adoption of Rule 19. *Koster v. (American) Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 522–23 n. 2, 67 S.Ct. 828, 830–31 n. 2, 91 L.Ed. 1067 (1947).

*Smith v. Sperling* adopts a mechanical rule: the unwilling corporation is aligned as a defendant. Sometimes this creates diversity (as in *Sperling*), sometimes it defeats diversity. *Sperling* is not a one way street, with the corporation participating only when its presence creates federal jurisdiction. If Count I of Bagdon's complaint states a derivative claim, then the complaint must be dismissed. Bagdon could in principle dismiss the claim that

spoils jurisdiction, could have done so even in this court, *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). Despite the drumbeat of jurisdictional objections from Firestone, Bagdon did not offer to drop all claim to damages on account of profits the corporation lost.

Thus we arrive at the question whether a claim that the majority stockholder wrongly competed with the corporation is derivative. Bagdon and Firestone agree that this is a question of state law—for the identity of the real party in interest depends on the law creating the claim. See also *Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979), and *Starrels v. First National Bank of Chicago*, 870 F.2d 1168 (7th Cir.1989), the former implying, and the latter holding, that when state law supplies the rule of decision in a derivative suit, it also governs procedures such as the requirement of demand on directors. Cf. *Kamen v. Kemper Financial Services, Inc.*, 908 F.2d 1338, 1341–42 (7th Cir.1990) (federal law governs procedure when it supplies the rule of decision).

■ Which state's law? We turn to the choice-of-law principles of the forum state, Illinois in this case. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Illinois, like other states, uses as its choice-of-law principle in corporate governance the internal affairs doctrine. *Paulman v. Kritzer*, 38 Ill.2d 101, 230 N.E.2d 262 (1967), affirming 74 Ill.App.2d 284, 219 N.E.2d 541 (2d Dist.1966); *Pros v. Mid–America Computer Corp.*, 142 Ill. App.3d 453, 96 Ill.Dec. 572, 577–78, 491 N.E.2d 851, 856–57 (2d Dist.1986); *Kern v. Chicago & Eastern R.R.*, 6 Ill.App.3d 247, 285 N.E.2d 501, 503 (1st Dist.1972). See *Restatement (2d) of Conflicts of Law* §§ 301–10 (1971). This sends us to Delaware, where Ford City West is incorporated. The choice between derivative and direct litigation is a choice about how (and by whom) the internal affairs of the firm are managed. If the suit is derivative, the board may have an opportunity to control or dismiss the litigation. *Spiegel v. Bun-*

*trock*, 571 A.2d 767 (Del.1990). Recoveries pass through the corporate treasury, a process that both protects creditors (who get first dibs) and avoids questions of apportionment that crop up when a jury must determine how much the firm would have paid out in dividends. *Mid–State*, 877 F.2d at 1335–36. See DeMott at § 2.01, listing other ways in which the choice matters to the corporation's operations.

The only candidate other than Delaware is Ohio, whose law Bagdon and Firestone elected in a 1981 agreement governing Bagdon's role in the store-corporation. When denying Firestone's motion to dismiss, the district court observed that "[n]either plaintiff nor defendant [has] discussed which state's law is applicable to this case", an observation it reiterated when granting Firestone's motion two years later to dismiss Counts II and III. 1989 WL 24492, 1989 U.S.Dist. LEXIS 2607. On appeal the silence continues. Firestone contends that Bagdon's claim is derivative, scarcely mentioning either state law or this clause; Bagdon does not deign to discuss the subject. Indeed, Bagdon's brief devotes only one paragraph to the question whether the claim is derivative, citing nary a case and not suggesting that choice of law makes a difference. (A second paragraph cites two cases for the proposition that fiduciaries are liable for the foreseeable consequences of their wrongful actions, neither here nor there when the question is whether the claim for a diminution in corporate profits, and derivatively Bagdon's dividends, belongs to the corporation rather than the shareholder.)

■ The difference between Ohio and Delaware law is substantial. *Crosby v. Beam*, 47 Ohio St.3d 105, 548 N.E.2d 217 (1989), allows minority shareholders in close corporations to sue individually when they claim that the controlling shareholders deprived the minority of the benefits of their investment. Delaware takes the opposite view. (We discuss its cases below.) For two reasons, we conclude that Delaware law governs. First, Bagdon has waived any claim to the benefit of Ohio law by not briefing the choice-of-law question

issue in either the district court or this court. The internal affairs doctrine points to Delaware; something other than silence is necessary to persuade us to go elsewhere. Second, if the question were before us we would incline to think that the choice-of-law clause governs the validity and effect of the contract and does not affect corporate law on subjects outside that pact. Delaware supplies an elaborate body of law to govern corporate affairs, law that applies unless varied by contract. The agreement between Bagdon and Firestone settles many subjects concerning Bagdon's employment (it contains a no-competition clause, for example) and their relative stakes as investors (it says among many other things that Firestone's holdings shall not be less than 51% and that Bagdon shall have preemptive rights if the firm issues additional stock). It does not speak to corporate governance—questions such as how directors are elected, whether demand on directors is necessary before pursuing claims, and the like. Investors may strike agreements between themselves on many subjects, under many bodies of law, without altering the principle that the law of the state of incorporation regulates internal affairs.

■ Delaware law it is, then. Delaware follows the venerable rule that a claim is derivative if injury is mediated through the corporation. *Elster v. American Airlines, Inc.*, 34 Del.Ch. 94, 100 A.2d 219 (1953). It also follows the "special injury" exception to this rule, *id.* 100 A.2d at 222, allowing a shareholder to litigate independently if the wrong to the corporation inflicts a distinct and disproportionate injury on the investor. The "special injury" rule allows Bagdon to pursue his claim that Firestone defrauded him by promising him suzerainty over Ford City East. Bagdon's claim for lost bonus comes within the same shelter. Although the bonus varies with Ford City West's profits, the injury to Bagdon is nonetheless "special" because Firestone pays Bagdon directly.

Ohio, like a few other states, has expanded the "special injury" doctrine into a general exception for closely held corporations,

treating them as if they were partnerships. *Crosby* follows *Donahue v. Rodd Electrotype Co.*, 367 Mass. 578, 328 N.E.2d 505 (1975), and *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 460 P.2d 464, 81 Cal.Rptr. 592 (1969). The American Law Institute recommends that other states do the same. *Principles of Corporate Governance* § 7.01(d) and pp. 22–25 (comment), 30–36 (reporter's note). The premise of this extension may be questioned. Corporations are *not* partnerships. Whether to incorporate entails a choice of many formalities. Commercial rules should be predictable; this objective is best served by treating corporations as what they are, allowing the investors and other participants to vary the rules by contract if they think deviations are warranted. So it is understandable that not all states have joined the parade.

Delaware, for one, has not. When the controlling stockholder of a family corporation transferred its assets for inadequate consideration, Delaware required the minority investors to pursue derivative litigation, observing that the value of the minority shares went down only to the extent the corporation as an entity was worth less. *Taormina v. Taormina Corp.*, 32 Del.Ch. 18, 78 A.2d 473 (1951). When the owner of 95% of a closely held firm's stock proposed to liquidate the corporation at what the minority thought was an inadequate price, Delaware again required the minority to bring the objection derivatively. *Abelow v. Symonds*, 38 Del.Ch. 572, 156 A.2d 416 (1959). In neither case did the Chancellor think it important that the wrong alleged involved the controlling stockholder enriching itself at corporate expense, or that the corporation was closely held. The author of the leading treatise treats *Abelow* as establishing the proposition that "the closely held nature of the corporation [is] irrelevant to the distinction between direct and derivative actions." DeMott, § 2.01 at 4. The Reporter of the ALI's corporate governance project disapproves, *Principles of Corporate Governance* at 36, but *Abelow* is the law of Delaware today. The Supreme Court of Delaware often cites *Abelow* and *Taormina* favorably, e.g., *Kramer v. Western Pacific Industries, Inc.*, 546

A.2d 348, 351–52 (Del.1988); *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784 (Del. 1981), and it has rejected the more elastic approaches of other jurisdictions, *Bokat v. Getty Oil Co.*, 262 A.2d 246 (Del.1970).

Jurisdictional rules should be simple. Why spend years litigating the right court in which to litigate? Certainty is elusive in a case such as this, in which jurisdiction depends on a question of characterization that different states would resolve differently. Lest the details of the "special injury" doctrine, and its implementation in Delaware, obscure the fundamentals, we repeat the theme. Bagdon believes that Firestone wrongly competed with Ford City West. Firestone owed that duty to the store-corporation, not to its employee Bagdon—an employee Firestone was free to dismiss for any or no reason. Violation of the duty injured the store-corporation, and Bagdon's loss was derivative (he could not receive dividends out of profits the corporation did not make). Bagdon alleged some direct injuries, which he was free to litigate, but he could not recover on account of the store-corporation's diminished profits without making the corporation a party. The district court therefore should have granted Firestone's motion to dismiss this case for want of diversity jurisdiction. We vacate the judgment and remand for that purpose.

VACATED.