(985 P.2d 730)
No. 80,686

MARSHA L. HUNT and PMH, INC., *Appellees*, v. DATA MANAGEMENT RESOURCES, INC., WILLIAM C. ESTES, and AUBREY RICHARDSON, *Appellants*.

Opinion filed August 27, 1999.

*Mark Beam-Ward*, of Hill, Beam-Ward & Kruse, L.L.C., of Overland Park, for appellants.

*Robert J. Bjerg*, of Seigfreid, Bingham, Levy, Selzer & Gee, P.C., of Kansas City, for appellees.

Before ELLIOTT, P.J., MARQUARDT, J., and J. MICHAEL SMITH, District Judge, assigned.

ELLIOTT, J.: Marsha L. Hunt sold her stock in Data Management Resources, Inc. (DMR) to PMH, Inc. (PMH). DMR and its officers, William C. Estes and Aubrey Richardson, appeal the trial court's order in mandamus requiring DMR to transfer the stock to PMH on its corporate books.

We affirm.

The facts are essentially undisputed. DMR is a closely held Kansas corporation formed in 1992. Estes and Richardson are the di-

rectors and officers of DMR and are shareholders as well. Hunt was a minority shareholder.

Hunt offered to sell her shares to Estes and Richardson for $50,000, informing them that if they rejected her offer, she would transfer her shares to an entity which would disqualify DMR from subchapter S corporation tax status. Hunt explained she wanted to reduce her personal tax liability on undistributed income. Hunt received no reply; her husband formed PMH and capitalized it with $25,000 from his personal account. PMH then offered to buy Hunt's shares for $25,000.

As required by DMR's articles, Hunt gave Estes and Richardson a 30-day option to buy her shares for $25,000, explaining she would accept PMH's offer if they did not exercise their option. Estes and Richardson rejected the option to buy.

PMH then purchased Hunt's shares for $25,000; Hunt deposited the PMH check in an account she held jointly with her husband, who then wrote a check on the joint account for $25,000 and deposited it in his personal account.

When DMR refused to transfer the shares on the corporate books and issue a certificate to PMH, Hunt and PMH filed a mandamus action against DMR and against Estes and Richardson in their official capacities. Appellants DMR, Estes, and Richardson accused Hunt of violating her fiduciary duty as a shareholder in a close corporation, and also argued the PMH offer was not bona fide. The trial court disagreed and issued its mandamus order requiring that the transfer be recorded and a certificate be issued to PMH.

Appellants argue Hunt owed a fiduciary duty to Estes and Richardson as shareholders. The mandamus action, however, was not against them as shareholders but as officers of DMR. Mandamus is a proceeding to compel, *inter alia*, a corporation or a person to perform an official duty. See K.S.A. 60-801. Mandamus is appropriate to compel a corporation or its officers to transfer stock on its corporate books. See *Steele v. Telephone Association*, 95 Kan. 580, 148 Pac. 661 (1915).

Here, the trial court ordered Estes and Richardson to perform an official duty, and they brought no counterclaims for personal

damages. As a result, Hunt's behavior would be a defense only if she owed a fiduciary duty to the corporation itself.

The law does not impose a strict fiduciary duty on a shareholder to act in the best interests of the corporation; a shareholder is free to act in his or her own self-interest. *Resolution Trust Corp. v. Fleischer*, 890 F. Supp. 972, 978 (D. Kan. 1995). As a general proposition, then, Hunt owed no fiduciary duty to DMR.

Appellants rely on *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 (7th Cir. 1995). There, in an equitable action, the court held minority shareholders owe a duty of loyalty to a close corporation under certain circumstances. The reliance is misplaced.

Our examination of Kansas law shows DMR was *not* a close corporation. While the parties *stipulated* DMR was a close corporation, we are not bound by stipulations as to questions of law. See *City of Lenexa v. Board of Johnson County Comm'rs*, 237 Kan. 782, Syl. ¶ 1, 703 P.2d 800 (1985). The legislature has statutorily defined close corporations. See K.S.A. 17-7201 *et seq.*; Hecker, *Close Corporations and the Kansas General Corporation Code of 1972*, 22 Kan. L. Rev. 489, 546 (1974).

A close corporation is one whose articles provide for a specified number of shareholders, not exceeding 30; one or more restrictions on transfers of stock, as found at K.S.A. 17-6426; and no public offering of stock. K.S.A. 17-7202(a)(1)-(3). A close corporation must also include a heading to that effect in its articles of incorporation. K.S.A. 17-7203(a). In the present case, DMR's articles did not restrict the number of shareholders, did not prohibit a public offering of stock, and did not include the required heading.

While the *Rexford Rand* court held a corporation not organized under the Illinois close corporation statute was still a close corporation under common law, 58 F.3d at 1217 n.1, the Delaware Supreme Court has refused to create protective rules where a corporation is a "closely-held, but not statutory 'close corporation.'" *Nixon v. Blackwell*, 626 A.2d 1366, 1380 (Del. 1993). The Delaware court held the legislature had preempted the field by statute and any effort to construct a special rule outside the statutory framework would amount to inappropriate judicial legislation. 626 A.2d at 1380-81.

Since the Kansas statute is based on the Delaware statute, decisions of the Delaware court are persuasive. See *Achey v. Linn County Bank*, 261 Kan. 669, 676, 931 P.2d 16 (1997). We, therefore, adopt the Delaware holding and reject the holding of *Rexford Rand*.

Simply put, appellants cannot claim any special treatment accorded close corporations because DMR did not fit within the statutory framework. Further, appellants were not powerless to protect their interests. They could have required prior approval of any transfer or transferee. K.S.A. 17-6426(c)(3). They could have prohibited transfers to reasonably designated classes of persons. K.S.A. 17-6426(c)(4). And a restriction for the purpose of maintaining subchapter S tax status would be conclusively reasonable. See K.S.A. 17-6426(d). Here, DMR, Estes, and Richardson simply failed to take these steps.

Appellants next argue the sale was in violation of DMR's articles of incorporation. DMR's articles required a shareholder to offer the shares to the remaining shareholders "at a price no greater than a bona fide offer by any third person." If the remaining shareholders decline the offer, the shares could be sold "at the price of the bona fide offer to the third person."

The first part of the provision protects the remaining shareholders by giving them an option to buy at no more than market, as opposed to an inflated, price. The second part concentrates not on the price offered to the remaining shareholders but on the price offered to third persons. This appears to prevent a sale to the third person at a price below that offered to the remaining shareholders—in which event the remaining shareholders would not have a true first option to buy.

In the present case, the uncontroverted evidence showed Hunt's stock was worth, after applying a minority interest discount, between $77,000 and $99,000. Hunt clearly complied with the first requirement of the articles of incorporation provision; her offer to Estes and Richardson was not greater than a bona fide third-person offer.

Contrary to what appellants argue, the DMR articles only regulated the price of the offer, not the identity of the third-person

purchaser or the motive of the seller. A "bona fide offer" was simply the template against which the *price* of a shareholder's offer would be measured. As previously discussed, if appellants had wished to restrict the sale of shares beyond the price term, they were free to do so and could have done so in the articles of incorporation.

Appellants also make some general allegations of fraud and deceit, but Hunt clearly informed them of her intentions. Absent a transfer restriction in the articles, how Hunt and/or her husband financed the transaction is simply not relevant.

The sale also met the second part of the provisions in the articles. While the sale to PMH obviously was discounted from the market price, it was the same price offered to Estes and Richardson; Estes and Richardson had a true first option to purchase. Given that the purpose of the provision was to protect the remaining shareholders, not the selling shareholder, Hunt's action was not contrary to the articles of incorporation.

Since Hunt was under no fiduciary duty, she was free to negotiate for the sale, Hunt's offer and eventual sale to PMH did not violate the articles of incorporation, and the trial court properly issued its mandamus order requiring the transfer of the stock to PMH.

Affirmed.