540

(266 P.3d 539)
No. 104,000

IRMA LIGHTNER, *Appellee/Cross-Appellant*, and ROBERT LIGHTNER and LLOYD LIGHTNER, *Interveners/Appellees*, v. GERALD LIGHTNER and KYLE LIGHTNER, *Appellants/Cross-appellees*.

Opinion filed September 23, 2011.

*James D. Oliver* and *Toby Crouse*, of Foulston Siefkin LLP, of Overland Park, *John M. Lindner*, of Lindner & Marquez, of Garden City, and *Daniel H. Diepenbrock*, of Law Office of Daniel H. Diepenbrock, P.A., of Liberal, for appellants/cross-appellees.

*Charles D. Lee, Myndee M. Reed,* and *Arlyn Miller*, of Martindell Swearer Shaffer Ridenour LLP, of Hutchinson, for appellee/cross-appellant.

*John Shirley*, of Wallace, Brantley & Shirley, of Scott City, for Interveners/appellees.

Before GREENE, C.J., MALONE and BRUNS, JJ.

GREENE, C.J.: Gerald and Kyle Lightner (the defendants) appeal the district court's judgments against them and in favor of their sister and plaintiff, Irma Lightner, for $264,951 as well as their brothers and interveners, Robert and Lloyd Lightner for a combined total of $895,786, as well as costs, after a bench trial of Irma's claims that Gerald and Kyle engaged in a breach of fiduciary duty and self-dealing in their respective capacities as officers and directors of D. Lightner Farms, Inc. (the Corporation). Gerald and Kyle argue on appeal (a) that the action against them was barred in part by the statute of repose and barred completely by the applicable statute of limitations; (b) that the inequitable conduct of the plaintiff and interveners barred any recovery; and (c) that the district court erroneously imposed the burden of proof on the defendants. Concerned that lack of the plaintiff's standing to sue might prove to be a jurisdictional defect, we ordered supplemental briefing on this question as well. Ultimately concluding that the

plaintiff and interveners indeed lacked standing as individual shareholders to bring what they initially termed and have conceded were derivative claims against the corporation, we vacate the judgments and remand with directions to dismiss the action.

## FACTUAL AND PROCEDURAL OVERVIEW

In October 2003, Irma Lightner filed her petition against the defendants, as well as the Corporation and "R.F. Let it Ride, L.L.C." (the LLC), alleging that the defendants were "actively involved in the management and operations" of the Corporation as "executives and directors" and that during the period since 1991 they "participated in the acts of mismanagement and self-dealing" in a manner that resulted in the "dilution of the shareholders' interests" in the Corporation. The only claim for relief was titled "breach of fiduciary duty" and contained allegations (a) that the defendants "engaged in a series of self-dealing lease transactions" and "have inappropriately benefitted themselves while resulting in underpayment" to the Corporation "for equipment rental and cash rent for land" and (b) that the defendants "arranged for and been paid compensation well in excess of that which is reasonable." Although the petition categorized the same misconduct as "fraud," there was no further allegation or specificity beyond the single mention of fraud. Notably, the petition included an allegation that the claims, "though derivative in nature, will not (a) unfairly expose the corporation to a multiplicity of claims; (b) materially prejudice the interests of creditors in the corporation; or (c) interfere with a fair distribution of the recovery among all interested persons."

At the time of the petition's filing, ownership of outstanding corporate shares was held by the eight children of Dale and Jessie Lightner, who were killed in a vehicle accident in 1980. Ownership of the shares at all material times was as follows: Irma (plaintiff) 10.25%; Gerald (defendant) 13.25%; Kyle (defendant) 10.25%; Lloyd (intervener) 22.25%; Robert (intervener) 13.25%; Vivian (not a party) 10.25%; Phyllis (not a party) 10.25%; and Edith (not a party)10.25%.

In December 2004, Robert and Lloyd filed their motion to intervene, alleging their shareholder interests and attaching their pe-

tition containing nearly identical allegations and seeking their share of damages.

In September 2005, the defendants sought summary judgment based upon (a) failure to plead statutory prerequisites for a derivative action; (b) lack of standing to maintain a direct shareholder action on a derivative claim; (c) no factual allegation or support for fraud; (d) laches, acquiescence, and ratification; and (e) statutes of repose and limitations. District Judge Robert Frederick heard arguments on the motion and then, in a well-reasoned and thorough memorandum decision, denied it in all aspects except as to those claims barred by the statute of repose.

With respect to the standing question, Judge Frederick relied on *Mynatt v. Collis*, 274 Kan. 850, 57 P.3d 513 (2002), and *Richards v. Bryan*, 19 Kan. App. 2d 950, 879 P.2d 638 (1994), holding that "other courts were beginning to recognize an exception to the historical distinctions between derivative and direct individual shareholder actions in the context of closely held corporations." He concluded that both *Mynatt* and *Richards* made it discretionary to allow a party to proceed with a direct suit in lieu of a derivative action:

" '[I]f [the court] finds to do so will not (1) unfairly expose the corporation to a multiplicity of actions; (2) materially prejudice the interests of creditors in the corporation; or (3) interfere with a fair distribution of the recovery among all interested persons.' "A fair distribution of the recovery" requires a court to consider the effect of recovery on any nonparty shareholders.' " (Quoting *Mynatt*, 274 Kan. 851, Syl. ¶ 9).

Notably, however, Judge Frederick also specifically held that he was making no finding that the three requirements set forth in both *Mynatt* and *Richards* were satisfied here.

"As important as this ruling may be to Plaintiff and Interveners, it does nothing to suggest that Plaintiff and Interveners have satisfied the three (3) prong test of *Richards* or that the Court, in its equitable power and discretion, could not deny Plaintiff and Interveners the ability to proceed directly for reasons not yet raised or fully developed."

The matter proceeded to bench trial in the fall of 2008 before District Judge Phillip C. Vieux. At the close of the plaintiff's case, the defendants moved for a directed verdict on the standing issue.

Their motion noted that the only approach to damages was an estimate of the lost net worth to the Corporation, with an allocation to party shareholders based on percentage interest. They also argued that the plaintiff had the burden to prove the elements of the *Richards* test but had failed to do so. Finally, they argued that the plaintiff and interveners were no longer in the minority, but they had become the controlling block of the corporation. Judge Vieux took the issue under advisement.

In May 2009, Judge Vieux issued his Memorandum Decision and Order holding that the defendants had breached their fiduciary duties to the Corporation and engaged in self-dealing resulting in benefits to the defendants to the prejudice of the Corporation. The total damages to the Corporation (*without* excluding those barred by the statute of repose) were established at $2,523,343, and the court then allocated a judgment award in favor of the plaintiff and interveners based on their percentage shares of stock ownership and against all defendants and each of them—including the Corporation.

In their motion to alter or amend the judgment, defendants argued that the plaintiff and interveners had represented that their action would establish the elements of the *Richards* test, but that the evidence demonstrated that their direct action had "exposed the corporation to a multiplicity of actions" and "severely prejudiced the interests of creditors and other stockholders." The district court denied this motion without further findings.

The defendants timely appeal. Prior to oral argument, we directed the parties to submit supplemental briefing on issues of standing. All parties complied with our order and were also prepared to discuss the issue at oral argument.

Standards of Review Applicable to Issues of Standing

Standing to sue is a component of subject matter jurisdiction, which may be raised for the first time on appeal or on the appellate court's own motion. *State v. Ernesti*, 291 Kan. 54, 60, 239 P.3d 40 (2010). Whether standing exists is a question of law subject to unlimited review. *State v. Gilbert*, 292 Kan. 428, 431-32, 254 P.3d 1271 (2011); *Mid-Continent Specialists, Inc. v. Capital Homes*, 279

Kan. 178, 185, 106 P.3d 483 (2005). It is clear that if a party does not have standing to challenge an action or to request a particular type of relief, then there is no justiciable case or controversy and the suit must be dismissed. See *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 490, 14 P.3d 1154 (2000).

### DID PLAINTIFF AND INTERVENERS HAVE STANDING TO BRING DERIVATIVE CLAIMS IN A DIRECT ACTION AGAINST ALLEGED MALFEASANT OFFICERS AND DIRECTORS OF THE CORPORATION AND THE CORPORATION ITSELF?

At the outset, this court raised the issue of standing on its own motion due to a host of "red flags" that became apparent upon a review of the initial appellate briefs. We noted: (1) The initial petition and the plaintiff's brief on appeal characterized the claims herein as derivative in nature; (2) the Corporation itself was named as a party defendant in the initial petition, and judgment was entered against the Corporation by the district court; (3) the defendants together never owned more than a total of 23.5% of the outstanding stock of the Corporation; (4) the damages were premised upon injury to the Corporation, and the resulting judgments were based on a simple allocation of that corporate injury only to shareholders who were parties based on percentage of outstanding shares owned; (5) three shareholders representing 31.5% of outstanding shares were not parties to the suit; (6) in 2005, the plaintiff became president of the Corporation and, with the interveners and another shareholder, became a majority voting block but continued their action against the Corporation; and (7) at least one additional lawsuit has been filed among these same parties, which the trial court observed "could be considered overlapping or undercutting this action."

In the defendants' supplemental brief, they essentially argue that the plaintiff and interveners failed to satisfy the *Richards* three-prong test for a direct action and that the *Richards* exception to the rule against direct actions does not apply here because the Corporation was not a statutory close corporation, citing *Hunt v. Data Mgmt. Resources, Inc.*, 26 Kan. App. 2d 405, 985 P.2d 730 (1999). In contrast, the appellees argue that the district court had

discretion to permit a direct action here, that they satisfied the three-prong test of *Richards*, and that the *Hunt* case did not limit direct actions to statutory close corporations. These competing arguments require that we analyze the law governing shareholder suits against corporations.

*Overview of the Law Distinguishing Direct Actions from Derivative Actions Against Corporations*

When a corporation has been injured by the actions of those in control thereof, the well-established general rule is that the suit seeking redress for such a grievance belongs to the corporation and must be brought as a derivative action, meaning one or more shareholders may bring suit on behalf of the corporation for harm done to the corporation. *Kramer v. Western Pacific Industries*, 546 A.2d 348, 351 (Del. 1988) (quoting Clark, Corporate Law 639-40 [1986]). Direct actions by a shareholder against officers or directors of a corporation are generally reserved for injuries affecting the individual legal rights of that shareholder. *Tooley v. Donaldson, Lufkin & Jenrette*, 845 A.2d 1031, 1036 (Del. 2004). Shareholders do not have standing to sue for harms to the corporation or even for the derivative harm to themselves that might arise from a tort or other wrong to the corporation. *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 777 (7th Cir. 1994); see *In re First Interstate Bancorp Litigation*, 729 A.2d 851 (Del. 1998).

Determining whether an action is derivative or direct is sometimes difficult and has many legal consequences. See, *e.g.*, *Abelow v. Symonds*, 156 A.2d 416, 420 (Del. Ch. 1959). In *Tooley*, the Supreme Court of Delaware has provided the quintessential test for the distinction:

"The analysis must be based solely on the following questions: Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy? This simple analysis is well imbedded in our jurisprudence . . . .

". . . [T]he inquiry should be whether the stockholder has demonstrated that he or she has suffered an injury that is not dependent on an injury to the corporation. . . . 'Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he

or she can prevail without showing an injury to the corporation?' " *Tooley*, 845 A.2d at 1035-36.

Although the plaintiff and interveners argue on appeal that this general rule is "archaic," we disagree. The general rule as articulated by the Delaware court in *Tooley* has been cited and applied in a host of jurisdictions; *Tooley* has been characterized as a "landmark" decision and applied in Delaware as recently as 2011. *Hartsel v. Vanguard Group, Inc.*, C.A. No. 5394-VCP, 2011 WL 2421003, at *16 (Del. Ch. 2011) (unpublished opinion); see *Feldman v. Cutaia*, 951 A.2d 727, 729 (Del. 2008); see also 12B Fletcher, Cyclopedia of the Law of Corporations §§ 5908 (2009) *et seq.* (recognizing the general rule but acknowledging jurisdictions allow direct actions in some circumstances, citing *Richards*); Annot., *Action in Own Name by Shareholder of Closely Held Corporation*, 10 A.L.R.6th 293 ("It has been a fundamental principle of corporate law that when a third party causes harm to a corporation, if the corporation does not bring an action for compensation, a shareholder may not proceed by way of a direct action to seek such recovery"). Although these authorities acknowledge that many jurisdictions have now recognized exceptions to the general rule—as noted by our court in *Richards*—the general rule is alive and well in the absence of the specific circumstances where an exception may be recognized in the unique jurisprudence of a given state. See 12B Fletcher, Cyclopedia of the Law of Corporations § 5911, p. 517 (state law determines whether a shareholder may maintain a direct, nonderivative action).

*Overview of Kansas Law Applying These Concepts*

Kansas courts have a long history of looking to the decisions of the Delaware courts involving corporation law, as the Kansas Corporation Code was modeled after the Delaware Code. *Welch v. Via Christi Health Partners, Inc.*, 281 Kan. 732, 765, 133 P.3d 122 (2006). Thus, we must give significant precedential value to those cases cited above from Delaware.

At the outset, we note that since 1969, Kansas has recognized derivative actions within our Code of Civil Procedure. At the time the Lightner action was filed, K.S.A. 60-223a provided:

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the petition shall be verified and shall allege . . . . The derivative action may be maintained only if the court is satisfied that the plaintiff will adequately represent the interest of the corporation or association."

This pre-2010 version of the statute, which is applicable here, provided a degree of protection against unreasonable or unfair results. The statute required a verified petition with specific allegations that the plaintiff was a shareholder at the time of the subject transaction and that the action was not a collusive one to confer jurisdiction on a Kansas court. The petition was also required to allege with particularity the efforts made by the plaintiff to obtain the action desired from the directors or others in control and the reasons for failure of those efforts or failure to exhaust those efforts. Finally, the statute placed a responsibility on the court to assure that the plaintiff would adequately represent the interest of the corporation. In 2010, the legislature amended the statute to state with more clarity these protective measures and to supplement them with other protections including those regarding settlement or compromise of such an action. See K.S.A. 2010 Supp. 60-223a; L. 2010, ch. 135, sec. 91, effective July 1, 2010.

Caselaw construing and applying these concepts in Kansas has not been prolific.

In *Richards*, our court explained the fundamental rules as follows:

"A claim is said to be derivative if injury is either to the corporation directly or to the shareholder but mediated through the corporation. *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 383 (7th Cir. 1990), *cert. denied* 500 U.S. 952 (1991); *McDaniel v. Painter*, 418 F.2d 545, 547 (10th Cir. 1969). A shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation. *Bagdon*, 916 F.2d at 383; *Moran v. Household Intern., Inc.*, 490 A.2d 1059, 1070 (Del. Ch. 1985). 'Whether a cause of action is individual or derivative must be determined from the "nature of the wrong alleged" and the relief, if any, which could result if plaintiff were to prevail.' *Kramer v. Western Pacific Industries*, 546 A.2d 348, 352 (Del. 1988)." 19 Kan. App. 2d at 961-62.

The *Richards'* panel determined that the majority of Richards' claims were to the corporation, and that Richards should have filed a derivative action under K.S.A. 60-223a, not an individual suit. 19 Kan. App. 2d at 962. The panel recognized that an exception exists when a minority shareholder is frozen out of the management of a close corporation through oppressive majority conduct. 19 Kan. App. 2d at 964. According to *Richards*, if a corporation is closely held, a court, in its discretion, may treat an action raising derivative claims as a direct action if it finds to do so *will not*: "(1) unfairly expose the corporation to a multiplicity of actions; (2) materially prejudice the interests of creditors in the corporation; or (3) interfere with a fair distribution of the recovery among all interested persons." 19 Kan. App. 2d at 965.

After *Richards*, our court had occasion to address whether Kansas recognized common-law close corporations or only close corporations organized under K.S.A. 17-7202. See *Hunt*, 26 Kan. App. 2d at 407-08. In *Hunt*, our court rejected an Illinois rule that extended such an exception to closely held corporations and embraced instead the Delaware rule from *Nixon v. Blackwell*, 626 A.2d 1366 (Del. 1993). *Hunt*, 26 Kan. App. at 407. The Delaware court resisted any extension of the exception to closely held corporations not organized under the statute because "the legislature had preempted the field by statute and any effort to construct a special rule outside the statutory framework would amount to inappropriate judicial legislation." 26 Kan. App. 2d at 407. The *Hunt* court recognized that if the statutory definition is not met, "simply put, appellants cannot claim any special treatment accorded close corporations because [the corporation] did not fit within the statutory framework." 26 Kan. App. 2d at 408; see 18 Am. Jur. 2d, Corporations § 39, p. 686 (2004) (citing *Hunt* for the proposition that "some states do not recognize a close corporation under common law").

Reading *Richards* and *Hunt* together, Kansas does not recognize common-law close corporations and, therefore, the exception to the requirement for derivative claims to be brought in a derivative action may not apply unless the corporation is a close corporation under K.S.A. 17-7202. We are not prepared to hold, however, that

the exception must be strictly limited to statutory close corporations because both our court in *Richards* and our Supreme Court in *Mynatt* use the terms "close corporation" and "closely held corporation" interchangeably and did not restrict the exception to close corporations formed under K.S.A. 17-7202.

In a later articulation of the law in Kansas, Judge Knudson addressed the close corporation exception of *Richards* in *Sparks v. CBIZ Accounting, Tax & Advisory of Kansas City, Inc.*, 36 Kan. App. 2d 660, 142 P.3d 749 (2006).

"Sparks admits his claim of professional negligence against CBIZ is derivative; that is, his injury, if any, is mediated through [the corporation]; therefore, Sparks is precluded from bringing an individual damage claim for the defendants' breach of duty owed to the corporation. [Citation omitted.] . . . Unfortunately for Sparks, *the close corporation exception only applies when an oppressed minority shareholder brings suit against majority directors, officers, or directors for breach of a fiduciary duty.* [Citation omitted.] It is a mischievous suggestion that the exception should be extended to permit litigation by a minority shareholder against a third party not owing a contractual duty to the shareholder. Such an exception would disregard the distinct nature of a corporation as a legal entity and allow an individual shareholder damages that rightfully belong to the corporation." (Emphasis added.) 36 Kan. App. 2d at 661.

In the only case reflecting our Supreme Court's foray into these concepts, the court was asked to overrule *Richards* in *Mynatt*, 274 Kan. 850. Instead, our Supreme Court embraced the *Richards'* analysis and its three-prong test, particularly the test requiring that any direct action not interfere with a fair distribution of the recovery among all interested persons. The court noted that this prong of the *Richards* test "requires a court to consider the effect of recovery on any nonparty shareholders." *Mynatt*, 274 Kan. at 873. In an effort to further restrict the exception, however, the court went so far as to hold that a court had the discretion to deny a direct action *even if all three prongs of the* Richards *test were met.* 274 Kan. at 873.

Contrary to the arguments of the plaintiff and interveners, however, at no time did the Supreme Court suggest that a court had discretion to *allow* a direct action without application and satisfaction of the *Richards* three-prong test; that is, unless the plaintiff has alleged and thereafter proven that the direct action *will not*

have *any* of the three adverse consequences designated by *Richards*, the court has no discretion to allow the action to proceed as a direct action. To suggest that the court has broad discretion to allow a direct action prior to application and satisfaction of the *Richards* three-prong test is a distorted construct of the *Mynatt* holding and is contrary to the clear direction of our Supreme Court in its discussion and application of *Richards*.

Finally, and most recently, our court addressed these concepts in *Miller v. Staab*, No. 91,931, unpublished opinion filed June 17, 2005, *rev. denied* 280 Kan. 983 (2005). There, our court once again cited and applied *Richards* in holding that the plaintiff's direct action petition raised derivative, not individual, claims. On this basis and because the pleading requirements of K.S.A. 60-223a were not satisfied, the court held that the petition failed to state a claim upon which relief could be granted. *Miller*, slip op. at 5-13.

In summary, Kansas law embraces the general rule that a shareholder suit for injuries to a corporation as a result of officer or director misconduct—including self-dealing or breach of fiduciary duty—must be brought as a derivative action and may not be brought as a direct action unless the corporation is at least a closely held if not a statutory close corporation under K.S.A. 17-7202 *and* the plaintiffs can prove that the action *will not* unfairly expose the corporation to a multiplicity of actions, materially prejudice the interests of creditor of the corporation, or interfere with the fair distribution of the recovery among all interested persons. Then and only then does the trial court have the discretion to permit a direct action rather than a derivative action.

*Did the Evidence Here Establish Satisfaction of the* Richards *Three-prong Test?*

At the outset of our analysis, we note that the parties concede that the Corporation was not formed as a close corporation under K.S.A. 17-7202. Additionally we note that this was clearly not a situation where a minority shareholder or group was being oppressed by a *majority* shareholder or group; the defendants collectively owned only a 23.5% share and, presumably, could have been removed as officers at any time by a majority of shareholders. Fi-

nally, we note that the ultimate result of a judgment *against the Corporation* is antithetical to the analytical framework for a derivative claim. These conclusions alone could arguably conclude our analysis, but we move on to the *Richards* three-prong test to demonstrate that the court had no discretion to permit a direct action under these circumstances.

We also note that the district court made no findings on the satisfaction of the *Richards* test, despite the clear admonition in Judge Frederick's summary judgment memorandum, the defendants' motion for directed verdict, and the defendants' posttrial motion to alter or amend the judgment. We must examine the record to determine whether any presumption that the test was satisfied by the evidence, when considered in the light most favorable to the prevailing party, supports the judgment. See *City of Mission Hills v. Sexton*, 284 Kan. 414, 422, 160 P.3d 812 (2007).

### *Exposure to a Multiplicity of Claims*

Not only do we find that a secondary lawsuit has been filed that, according to the district court "could be considered overlapping or undercutting this action," but there is additional potential for litigation. Because three of the shareholders representing more than 30% of the outstanding shares were not parties here, each could—subject to the statutes of repose and limitations—bring their own action on grounds identical or similar to those raised here. Other lawsuits could result from the financial stress on the defendants, who have guaranteed substantial corporate debt; it is easy to envision defaults on corporate debt that will result in a multitude of creditor actions against the Corporation.

### *Prejudice to the Interests of the Corporate Creditors*

The claim for relief framed by the plaintiff and interveners sought judgment against the Corporation. Accordingly, the Corporation's assets were then theoretically exposed to the suit, and—in turn—the Corporation's relationship with all its creditors may have been imperiled. Not only was this a potential result from the initial pleadings, we note that the judgment entered by the district court was entered against "Defendants, and each of them" and

therefore included a judgment against the Corporation. This is simply turning the derivative claims on their head; instead of the shareholders bringing suit on behalf of the Corporation, these shareholders sought and received judgment against their own Corporation! It would be difficult to imagine any more prejudicial outcome for the Corporation's creditors.

### Fair Distribution of Recovery

Because the action here sought and achieved significant judgments on behalf of some shareholders and excluded others, and also achieved a judgment against the Corporation, it cannot be said that it led to a fair distribution of recovery. The "double whammy" to the nonparty shareholders of both being excluded from any recovery and then seeing the same judgment imperil the Corporation's financial condition was entirely unfair to the nonparty shareholders. Granted, they could have intervened, but this option is not a sufficient prophylactic for our measurement purposes. Our task is to determine whether the direct action, as filed, would ensure a fair distribution of recovery *for all interested persons*. See *Tooley*, 845 A.2d at 1036 (inquiry is based on the body of the *complaint*); *Richards*, 19 Kan. App. 2d at 961-62 (test for direct or derivative claims must be determined from nature of the wrong *alleged* and the relief that could result). Here, examining the allegations of the petition alone would lead one to conclude that this action was not designed to ensure a fair distribution of recovery for all interested persons.

The plaintiff and interveners argue that "successful prosecution of a derivative action, with consequent repatriation of damages to the Corporation, would end with the [defendants] indirectly receiving a large portion of the recovery—surely a perverse result." Granted, the defendants would presumably be entitled to their share of damages awarded to the Corporation in a derivative suit, but they would be entitled to this share because they were shareholders. This would not be a perverse result. It would simply be associated with their percentage interest (here 23.5%) of any damages they may be required to pay to the Corporation. That is, their entitlement to a share of recovery based on percentage share own-

ership is wholly unrelated to the alleged misconduct that gave rise to any damages. Moreover, the court could simply modify or reduce the judgment against them by their percentage of ownership to avoid this result.

## SUMMARY AND CONCLUSION

Examining each of the elements of the *Richards* test, combing the record for evidence pertinent to each, and viewing that evidence in the light most favorable to the plaintiff and interveners, we must conclude that the judgment is not supported because the plaintiff and interveners—ultimate judgment creditors—had no standing to proceed.

We need not comment on the propriety of the defendants' mismanagement here. We need only to conclude that this direct action by a single shareholder among several against the Corporation and two officers and directors holding only 23.5% of the outstanding shares, for claims conceded to be derivative in nature, was a mangled misalignment of parties, demonstrating that the statutory safeguards of a derivative action may not be ignored. We note there was no apparent obstacle to a derivative action here; but the single shareholder had no standing to file and pursue these claims as a direct action. Because the plaintiff had no standing to sue, the district court was without subject matter jurisdiction. Accordingly, we must vacate the judgments and remand with directions to dismiss the action.

Vacated and remanded with directions.