NOT DESIGNATED FOR PUBLICATION

No. 115,099

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARK E. IDSTROM, M.D.,
*Appellee/Cross-appellant,*

v.

ALLIANCE RADIOLOGY, P.A.,
*Defendant;*

LUKE WILSON, M.D.,
ANDREW HARMON, M.D.,
ROBERT NEWTH, M.D.,
DOUGLAS BEST, M.D.,
JOSEPH VARRIANO, M.D., and
RALPH RICHARDSON, M.D.,
*Appellants/Cross-appellees*;

and JAMES ANTHONY, M.D.,
*Defendant.*


MEMORANDUM OPINION

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed January 13, 2017. Affirmed.

*Michael F. Saunders*, *J. Nick Badgerow*, *Blane R. Markley*, and *Kathryn G. Lee*, of Spencer Fane LLP, of Overland Park, for appellants/cross-appellees.

*Brandon J.B. Boulware*, *Charles W. German*, and *Daniel B. Hodes*, of German May PC, of Kansas City, Missouri, for appellee/cross-appellant.

Before SCHROEDER, P.J., LEBEN and GARDNER, JJ.

1

*Per Curiam*:  In a dispute amongst doctors involving the management and business opportunities of the Midwest Division of Alliance Radiology, P.A. (Alliance Radiology), Dr. Mark E. Idstrom was terminated as a stockholder and an employee of Alliance Radiology. Idstrom then sued several of the doctors and Alliance Radiology, primarily alleging violations of the Kansas Restraint of Trade Act, breaches of fiduciary duty, and civil conspiracy. The jury awarded damages for Idstrom's benefit and against Drs. Luke Wilson, Andrew Harmon, Robert Newth, Douglas Best, Joseph Varriano, and Ralph Richardson (collectively, the Directors) of $1 each for breach of fiduciary duty along with a judgment of $718,500 against all of the defendants for civil conspiracy.  The jury ruled in favor of defendants on the restraint of trade claims.

The Directors appeal raising six issues, and Idstrom cross-appeals raising five issues. Based on our review of the record, we find no trial errors and affirm.

FACTS

In 1998, four competing radiology practices created a super group in the Kansas City metropolitan area.  In 2000, the super group registered as a professional association in Kansas as Alliance Radiology, P.A.  Alliance Radiology was formed, in part, to create economies of scale in billing services, health insurance, dental and malpractice insurance; share administrative services; improve reimbursement rates; and to recruit and retain qualified radiologists.

Each of the previously independent groups became a "division" of Alliance Radiology but operated their respective businesses autonomously.  The four divisions were named Carondelet, Liberty, Saint Luke's, and Shawnee Mission, which generally identified their location for services within greater Kansas City.  Each division hired its own employees, had its own income statement, and, for the most part, did not share expenses.

2

Dr. Mark E. Idstrom became an employee at will of the St. Luke's Division in May 2005. He became a shareholder and president of the Division in either April or July 2007. Idstrom knew Alliance Radiology's contract with St. Luke's Plaza Hospital was expiring when he became a shareholder and used this information to lower his buy-in. Upon becoming a shareholder and president of the St. Luke's Division, Idstrom became a member of the Alliance Radiology Board of Directors (the Board).

The contract with St. Luke's Plaza Hospital expired because the Board was unwilling to approve the new contract since the new contract required Alliance Radiology to agree it would not be the exclusive provider of specialized radiology review. However, the St. Luke's Division had requested the Board approve the new contract. Upon losing the St. Luke's Plaza Hospital contract, the St. Luke's Division rebranded itself as the Midwest Division.

As president of the Midwest Division, Idstrom began exploring business opportunities to replace the loss of the St. Luke's Plaza Hospital contract. Idstrom initiated negotiations with U.S. Oncology on behalf of the Midwest Division to provide services at a new facility U.S. Oncology was building. When Idstrom presented this opportunity at a Board meeting, the Midwest Division's proposal was denied. Ultimately, the Board decided the Shawnee Mission Division would provide services for U.S. Oncology. Idstrom was prevented from working at U.S. Oncology.

In 2008, the Midwest Division began working at Centerpoint Hospital. The contract included language about exploring a merger between Alliance Radiology and the Western Missouri Radiology Group (WMRG) since both groups were providing services at the hospital. Despite the Board's preference to only hire some of the WMRG radiologists, Idstrom continued to negotiate a complete merger; however, no merger occurred. In 2010, Centerpoint Hospital sought new contracts for radiology services. Alliance Radiology submitted a proposal but the contract was awarded to a competitor.

In July 2010, the Board—except representatives from the Midwest Division—met at the Halbrook Country Club to discuss removing the Midwest Division from Alliance Radiology if it did not agree to remove Idstrom from the Board and as president of the division. Dr. Harmon presented the idea and Drs. Wilson and Newth supported the plan. Thereafter, shareholders from the other three divisions voted to remove the Midwest Division from Alliance Radiology. After being removed from Alliance Radiology, the Midwest Division shareholders voted to remove Idstrom as president of their division. Following the Midwest Division's vote to remove Idstrom as president, Alliance Radiology shareholders voted to reinstate the Midwest Division. Idstrom remained employed by the Midwest Division.

In late 2011, Dr. Best, a Midwest Division shareholder and Alliance Radiology board member, began communicating with Virtual Radiology Group (vRAD), about a potential merger. If the merger occurred, Midwest Division shareholders would receive a combined $4 million payout. However, vRAD refused to complete the merger if Idstrom remained a stockholder and employee of the Midwest Division. The Midwest Division's shareholders—other than Idstrom—unanimously voted to terminate Idstrom. His employment with the Midwest Division was terminated without cause on February 3, 2012.

On May 8, 2012, Idstrom filed suit against Alliance Radiology and Drs. Harmon, Wilson, Newth, Best, James Anthony, Richardson, and Varriano, among others. The other defendants were subsequently dismissed. He alleged a violation of the Kansas Restraint of Trade Act, K.S.A. 50-101 *et seq.*; tortious interference with contract, business relations, and business expectancy; breaches of fiduciary duty; and breach of contract. Idstrom amended his petition to include a claim for civil conspiracy.

The Directors moved for summary judgment, based in part on the statute of limitations. Idstrom opposed summary judgment arguing the discovery rule and

equitable estoppel applied to toll the statute of limitation since Alliance Radiology's outside counsel told him he "could not sue Alliance [Radiology] at any time while he was employed by them." The district court held the statute of limitations applied because "there is no factual authority for any exception to toll the limitations period." The district court also granted summary judgment for Directors on Idstrom's claim for tortious interference with a business relationship or expectancy. Finally, the district court held Idstrom could not recover posttermination damages.

On April 17, 2015, Idstrom moved for leave to amend his petition to include a claim for punitive damages. The district court denied the request, stating:

> "[T]he parties are bound by the agreement that they made at the March 27, 2015, hearing when they agreed that the April 10, 2014 Pretrial Order was the final Pretrial Order. [Idstrom] is bound that no amendments to the pleading were to be made and his subsequent motion to amend is accordingly denied."

The case proceeded to a jury trial. The jury found Alliance Radiology had not violated the Kansas Restraint of Trade Act, K.S.A. 50-101 *et seq*. It found Drs. Anthony, Wilson, Newth, and Harmon breached fiduciary duties owed to Idstrom and awarded damages of $1 against each defendant for the period from May 9, 2010, until February 3, 2012. The jury also found Drs. Best, Richardson, and Varriano breached fiduciary duties owed to Idstrom and awarded damages against each defendant from February 4, 2012, forward of $1. The jury found the Directors engaged a civil conspiracy and awarded damages of $718,500.

The Directors filed a motion to alter or amend the judgment alleging numerous errors. Idstrom filed a motion for new trial, also alleging numerous errors. The district court denied Idstrom's motion for a new trial. It also denied most of Alliance Radiology's motion to alter or amend the judgment. However, the district court did vacate the breach

5

of fiduciary duty verdict against Dr. Anthony. It further vacated the posttermination damages award against Best, Richardson, and Varriano because the district court previously ruled Idstrom could not recover posttermination damages and that part of the jury instruction directing the jury to consider posttermination damages was in error. The district court also vacated the civil conspiracy verdict as to Alliance Radiology and Dr. Anthony.

Additional facts will be provided as necessary.

ANALYSIS

*Idstrom has standing.*

On appeal, the Directors argue Idstrom lacked standing to bring breach of fiduciary duty claims. Idstrom contends the Directors did not preserve standing as an issue for appeal and have waived the argument. However, standing is a component of subject matter jurisdiction, and, as such, may be raised at any time. *Stechschulte v. Jennings*, 297 Kan. 2, 29, 298 P.3d 1083 (2013). The Directors have not waived this argument.

If a party does not have standing to bring an action or request a particular type of relief, the suit must be dismissed because there is no justiciable case or controversy. *Lightner v. Lightner*, 46 Kan. App. 2d 540, 546, 266 P.3d 539 (2011).

> "When a corporation has been injured by the actions of those in control thereof, the well-established general rule is that the suit seeking redress for such a grievance belongs to the corporation and must be brought as a derivative action, meaning one or more shareholders may bring suit on behalf of the corporation for harm done to the corporation. *Kramer v. Western Pacific Industries*, 546 A.2d 348, 351 (Del. 1988) (quoting R. Clark, Corporate Law 639-40 [1986]). Direct actions by a shareholder against

6

officers or directors of a corporation are generally reserved for injuries affecting the individual legal rights of that shareholder. *Tooley v. Donaldson, Lufkin & Jenrette*, 845 A.2d 1031, 1036 (Del. 2004). Shareholders do not have standing to sue for harms to the corporation or even for the derivative harm to themselves that might arise from a tort or other wrong to the corporation. *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 777 (7th Cir. 1994); see *In re First Interstate Bancorp Litigation*, 729 A.2d 851 (Del. Ch. 1998)." *Lightner*, 46 Kan. App. 2d at 547.

In *Richards v. Bryan*, 19 Kan. App. 2d 950, 961, 879 P.2d 638 (1994), a panel of this court described the difference between derivative and direct actions:

"A claim is said to be derivative if injury is either to the corporation directly or to the shareholder but mediated through the corporation. *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 383 (7th Cir. 1990), *cert. denied* 500 U.S. 952 (1991); *McDaniel v. Painter*, 418 F.2d 545, 547 (10th Cir. 1969). A shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation. *Bagdon*, 916 F.2d at 383; *Moran v. Household Intern., Inc.*, 490 A.2d 1059, 1070 (Del. Ch. 1985)."

The test for determining whether an action is derivative or direct is twofold:  who suffered the alleged harm and who would receive the benefit of the recovery?  *Lightner*, 46 Kan. App. 2d at 547.  The key inquiry is whether the plaintiff has demonstrated he or she can prevail on the alleged claims without showing an injury to the corporation.  46 Kan. App. 2d at 547-48.  Stated another way, to determine whether a cause of action is derivative or direct is dependent on the "'"nature of the wrong alleged" and the relief, if any, which could result if plaintiff were to prevail.'"  *Richards*, 19 Kan. App. 2d at 961-62 (quoting *Kramer*, 546 A.2d at 352).

Under the two prong test, the fiduciary duty claims against Wilson, Harmon, and Newth are clearly derivative despite Idstrom's arguments otherwise. Idstrom alleged these directors breached their fiduciary duties owed to him through:

"[V]arious acts of self-dealing, including:
"By self-dealing and allocating hospital contracts in a manner and effort to derive personal financial benefit (as opposed to a benefit which falls upon the professional association or all shareholders generally);
"By self-dealing and precluding certain radiologists within Alliance from performing radiology services at certain hospitals: and
"By causing certain business to be directed away from Alliance."

First, despite Idstrom's contentions to the contrary, his damage claim for breach of fiduciary duties was not unique to him. Instead, every shareholder in the Midwest Division was damaged by losing the contracts to St. Luke's, U.S. Oncology, and Centerpoint as a result of the Board's decisions. Even Idstrom's expert testified every Midwest Division shareholder suffered the same harm Idstrom alleges. In addition, Idstrom cannot show he could prevail without showing injury to the corporation. The Midwest Division lost business when it lost the St. Luke's, Centerpoint, and U.S. Oncology contracts, not just Idstrom. The fiduciary duty claims against Wilson, Harmon, and Newth are clearly derivative. Accordingly, they cannot be brought in a direct action unless some exception applies to allow it.

There is an exception that may apply when a corporation is closely held. In such cases, the court has discretion to

"treat an action raising derivative claims as a direct action if it finds to do so will not (1) unfairly expose the corporation to a multiplicity of actions; (2) materially prejudice the interests of creditors in the corporation; or (3) interfere with a fair distribution of the recovery among all interested persons." *Richards*, 19 Kan. App. 2d at 965.

8

Although the Directors cite *Lightner* for the proposition that the *Richards* exception only applies to close corporations as defined by K.S.A. 17-7202 since Kansas does not recognize common-law corporations, the Directors' reliance on *Lightner* is misplaced. Instead, the *Lightner* panel opined:

"Reading *Richards and Hunt* [*v. Data Management Resources, Inc*., 26 Kan. App. 2d 405, 407-08, 985 P.2d 730 (1999)] together, Kansas does not recognize common-law close corporations and, therefore, the exception to the requirement for derivative claims to be brought in a derivative action may not apply unless the corporation is a close corporation under K.S.A. 17-7202. *We are not prepared to hold, however, that the exception must be strictly limited to statutory close corporations because both our court* in Richards *and our Supreme Court* in Mynatt [v. Collis, 274 Kan. 850, 57 P.3d 513 (2002),] *use the terms 'close corporation' and 'closely held corporation' interchangeably and did not restrict the exception to close corporations formed under K.S.A. 17-7202.*" (Emphasis added.) *Lightner*, 46 Kan. App. 2d at 550-51.

The panel concluded:

"Kansas law embraces the general rule that a shareholder suit for injuries to a corporation as a result of officer or director misconduct—including self-dealing or breach of fiduciary duty—must be brought as a derivative action and may not be brought as a direct action unless the corporation is at least a closely held if not a statutory close corporation under K.S.A. 17-7202 and the plaintiffs can prove that the action will not unfairly expose the corporation to a multiplicity of actions, materially prejudice the interests of creditor of the corporation, or interfere with the fair distribution of the recovery among all interested persons. Then and only then does the trial court have the discretion to permit a direct action rather than a derivative action." 46 Kan. App. 2d at 552.

The district court did not conduct an analysis based on *Richards*, but it did let Idstrom pursue the claims in a direct action. Our analysis of the first *Richards* factor shows the district court had the discretion to do so. Here, Idstrom has shown his suit did not unfairly expose the corporation to a multiplicity of actions as no one else was

9

pursuing the interests he was; additionally, the statute of limitations has run and no other causes of action have been filed. As previously noted, the entire Midwest Division suffered the harm Idstrom suffered in his claims against Drs. Wilson, Harmon, and Newth; and the damages would be the same for every Midwest Division shareholder, but none of them chose to join in Idstrom's action against Drs. Wilson, Harmon, Newth, and Alliance Radiology. Additionally, we find no evidence Alliance Radiology's creditor's interest was materially affected or interfered with the fair distribution of the recovery amongst all interested parties since Idstrom is the only party.

The exception applies and Idstrom had standing to pursue his breach of fiduciary duty claims against Drs. Wilson, Harmon, Newth, and Alliance Radiology as derivative claims in a direct action.

In contrast, the claims against Drs. Best, Richardson, Varriano, and Alliance Radiology are not derivative claims. Idstrom alleged these directors held secret meetings to discuss a possible merger between the Midwest Division and vRAD and then orchestrated a shareholder vote to terminate him—a requirement to moving forward with the vRAD merger. Since the breach of fiduciary duty uniquely harmed Idstrom, he has standing to bring the claims in a direct action against Drs. Best, Richardson, and Varriano.

*The jury verdict based on the Directors' action after May 8, 2010, reflects no error.*

When a party challenges a jury verdict

> "'for insufficiency of evidence or as being contrary to the evidence, it is not the function
> of the appellate court to weigh the evidence or pass on the credibility of the witnesses. If
> the evidence, . . . when considered in the light most favorable to the prevailing party,
> supports the verdict, it will not be disturbed on appeal.'" *Wolfe Electric, Inc. v.*

10

*Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011) (quoting *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 478, 15 P.3d 338 [2000]).

The Directors argue Idstrom did not present evidence of any actions taken by Drs. Wilson, Harmon, Newth, Best, Richardson, and Varriano as directors after May 8, 2010. The May 8, 2010, date starts the beginning of the 2-year look-back provision of the statute of limitations in Kansas because Idstrom filed this action on May 8, 2012. See K.S.A. 60-513(a)(4). As a result, the Directors contend the jury's verdicts for breach of fiduciary duty and conspiracy should be vacated.

However, the record contains some evidence of actions taken by Drs. Wilson, Harmon, and Newth as directors after May 8, 2010. Dr. Burkhart testified the Directors decided Idstrom needed to be removed as president of the Midwest Division, and the Board members of the other three divisions met at the Hallbrook Country Club to discuss removing the Midwest Division if it did not agree to remove Idstrom as its president. Harmon presented the plan to have the remaining divisions vote out the Midwest Division; Drs. Wilson and Newth were at the meeting and supported the plan. Dr. Burkhart testified "most of the people there expressed" approval for the plan and indicated some of the Board members did not want the Midwest Division to get the Centerpoint contract because it would give the Midwest Division more votes on the Board. Although the Directors contend this testimony is insufficient to support the jury's verdict, they do not explain why.

While the resulting vote to remove the Midwest Division was a shareholder vote, the initial discussion among the Board—including Wilson, Harmon, and Newth—was not. The Hallbrook County Club meeting was evidence of direct action taken by the Wilson, Harmon, and Newth as directors. It supports the jury's verdict for breach of fiduciary duty as to those defendants.

11

Similarly, the record contains some evidence of actions taken by Best, Richardson, and Varriano as directors after May 8, 2010. Best was one of the Midwest Division's representatives on the Board. In late 2011 and early 2012, Best communicated with vRAD about a potential merger. If vRAD and the Midwest Division merged, the shareholders of the Midwest Division would receive a combined payout of approximately $4 million. The potential merger did not include Idstrom and, in late January 2012, Best hosted a meeting at his house, at which Richardson and Varriano attended, to discuss firing Idstrom. After the vote to terminate Idstrom, Best reported Idstrom's termination to vRAD. Best indicated Idstrom was aware of the discussions regarding a potential merger with vRAD but indicated Idstrom was not informed he was going to be fired if they merged because "they were unrelated." The actions are related and the evidence supports the jury's verdict.

The Directors also argue there was no evidence presented of self-dealing because self-dealing requires a transaction. Since the merger between WMRG and the Midwest Division—which would have given the Midwest Division more seats on the Board—was not completed, the Directors argue there was no transaction Wilson, Harmon, and Newth were involved in. Similarly, the Directors argue there was no evidence of a self-dealing transaction involving Best, Richardson, and Varriano because the proposed merger with vRAD was not completed. However, the Directors cite no authority indicating self-dealing requires a completed transaction instead of simply a proposed transaction. Here, the proposed transactions had definite and defined consequences that caused Alliance Radiology and the Midwest Division to take actions against Idstrom.

In addition, citing *Kansas Heart Hospital v. Idbeis*, 286 Kan. 183, 212, 184 P.3d 866 (2008), the Directors argue Wilson, Harmon, and Newth did not engage in self-dealing because maintaining their division's current level of representation on the Board benefited all non-Midwest Division shareholders. However, unlike in *Kansas Heart Hospital*, not all Alliance Radiology shareholders received the benefit: the Midwest

12

Division's shareholders did not benefit from—and were arguably harmed by—maintaining the current divisional makeup of the Board.

In the light most favorable to Idstrom, the jury could have determined Best, Richardson, Varriano, Wilson, Harmon, and Newth took actions as directors after May 8, 2010, which breached their fiduciary duties to Idstrom. Further, the record contains evidence of self-dealing. The jury's verdict as to Best, Richardson, Varriano, Wilson, Harmon, and Newth is supported by the evidence and is affirmed.

*The jury's verdicts on the breach of fiduciary duty claims and for civil conspiracy are supported by the evidence.*

The elements of civil conspiracy are:

"'(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.' [Citation omitted.] Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy." *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153 (1984) (quoting *Citizens State Bank v. Gilmore*, 226 Kan. 662, Syl. ¶ 7, 603 P.2d 605 [1979]).

Directors argue the trial evidence failed to establish a breach of fiduciary duty and as a result the verdict for conspiracy should be vacated because there were no unlawful overt acts. However, as previously discussed, the jury found, based on the evidence presented, a breach of fiduciary duty. Therefore, the jury could find for Idstrom on the civil conspiracy claim, provided there was sufficient evidence of the conspiracy itself.

13

*The jury verdict for conspiracy against Best, Richardson, and Varriano is supported by the evidence.*

A district court's decision on a motion to alter or amend a judgment pursuant to K.S.A. 2015 Supp. 60-259(f) is reviewed for an abuse of that discretion. *Miller v. Johnson*, 295 Kan. 636, 677, 289 P.3d 1098 (2012).

> "A district court abuses its discretion when: (1) no reasonable person would take the view adopted by the trial judge; (2) the ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion was made. *State v. Huddleston,* 298 Kan. 941, 960, 318 P.3d 140 (2014)." *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Directors argue the district court abused its discretion when it denied their motion to alter or amend the jury's verdict against Best, Richardson, and Varriano because the decision was based on an error of law. The district court ruled the jury's verdict for breach of fiduciary duty—without an award for damages—against Best, Richardson, and Varriano were sufficient unlawful overt acts to support the jury's verdict against them for conspiracy.

Citing *Stoldt*, 234 Kan. at 967, the Directors argue the verdict for conspiracy must be vacated because Idstrom's termination was lawful and any breach of fiduciary duty by Best, Richardson, and Varriano had no unlawful result sufficient to support the verdict. However, the Directors did not raise this argument in its memorandum supporting its motion to alter or amend the judgment; it only argued the claims against Best, Richardson, and Varriano should not have been submitted to the jury because prior orders of the district court had already disposed of the claims as a matter of law. Because the Directors did not preserve this argument in the district court, we do not consider it here. See *Wolfe Electric, Inc.*, 293 Kan. at 403.

14

*The evidence supports the jury's award of $718,500 for civil conspiracy.*

The Directors contend the jury's damage award for conspiracy was "a manifest error of fact" and the district court committed "a manifest error of law" when it refused to vacate the award. It contends Trial Exhibit 483 is insufficient to support the jury's damages award for conspiracy.

The district court's decision on a motion to alter or amend a judgment pursuant to K.S.A. 60-259(f) is reviewed for an abuse of discretion. *Miller*, 295 Kan. at 677.

The district court did not abuse its discretion when it denied the Directors' motion to alter or amend the judgment because the jury's award for damages was less than the range of damages suggested by Dr. Craig Schulman's testimony. The district court ruled there was "sufficient evidence to support the overall amount as the record contain[ed] expert evidence that the plaintiff, in the year 2012, suffered damages in the amount of $787,106.00 for the breach of fiduciary duty." The district court was not required to identify why the jury awarded the verdict it did, merely that sufficient evidence supports the verdict.

Trial Exhibit 483 reflects the possible ranges of Idstrom's damages. If a damages verdict is within the range of evidence, the verdict will not be disturbed simply because the court cannot determine exactly how the jury arrived at the verdict's amount. *Diefenbach v. State Highway Commission*, 195 Kan. 445, 447, 407 P.2d 228 (1965). Here, the damages verdict is less than the range of damages presented by Dr. Schulman. Averaging the shareholder incomes across the three unaffected divisions, Dr. Schulman testified Idstrom suffered approximately $847,000 in damages between August 20, 2007, and February 1, 2012. Averaging the compensation of the Liberty Division shareholders, a comparable group of shareholders, Dr. Schulman testified Idstrom suffered approximately $1.1 million in damages over that same time period.

15

Therefore, the decision to deny the Directors' motion to alter or amend the judgment was not unreasonable, based on an error of fact, or an error of law. The district court did not abuse its discretion when it denied Directors' motion to alter or amend the judgment.

*The jury verdict awarding $718,500 for damages for civil conspiracy after awarding nominal damages for breach of fiduciary duty does not reflect error.*

The decision to grant a motion to alter or amend a judgment pursuant to K.S.A. 60-259(f) is reviewed for an abuse of that discretion. *Miller*, 295 Kan. at 677.

Directors contend the district court committed an error of law and therefore abused its discretion by affirming the jury's award of $718,500 for damages for civil conspiracy. They argue the district court's reliance on *Beverly v. McCullick*, 211 Kan. 87, 505 P.2d 624 (1973), was misplaced because *Beverly* did not hold that conspiracy damages may exceed damages awarded for the underlying tort.

In *Beverly*, the plaintiffs alleged the defendants associated with the Salina Livestock Commission Company breached a partnership agreement prohibiting the parties from engaging in competitive businesses. The plaintiffs also contended the Salina Livestock Commission Company defendants conspired with other defendants— associated with the Farmers and Ranchers Livestock Commission Company—to breach the partnership agreement and destroy the plaintiffs' property as a livestock auction facility. The trial court found for the plaintiffs and awarded $250,000 in damages for loss of rents and other actual damages to the plaintiffs. On appeal, the defendants argued damages should be limited to loss of rents and profits because only those damages naturally arose from the breach of the contract. The Kansas Supreme Court responded:

> "This action is not limited to breach of contract. The trial court found each of the
> defendants was guilty of conspiracy. Conspiracy is a tort and all injuries and losses that

16

are the natural and probable results of the wrongful and tortious acts are recoverable. (*Foster v. Humberg*, 180 Kan. 64, 299 P.2d 46 [1956].) Diminution of the value of plaintiffs' business facility, as well as the loss of rents and profits, were the natural and probable results of defendants' tortious acts." *Beverly*, 211 Kan. at 98-99.

While we acknowledge *Beverly* is not directly on point, it persuades us to find damages for the tort of civil conspiracy are not limited to the damages awarded for the underlying wrong. Further, the Directors cite no authority holding that damages for civil conspiracy are limited to the damages of the underlying unlawful act. Here, as we have already discussed, the Directors took specific actions toward accomplishing the vRAD merger that caused harm to Idstrom, even though the merger ultimately wasn't completed. The district court did not commit an error of law or abuse its discretion when it affirmed the jury's damage award for $718,500.

*Alliance Radiology was not an unlawful trust as defined by the Kansas Restriction of Trade Act.*

In his cross-appeal, Idstrom claims the jury's verdict finding Alliance Radiology is not a trust as defined by K.S.A. 50-101 *et seq*. "goes against the weight of evidence and merits a new trial."

It is within the discretion of the trial court to grant or deny a new trial under K.S.A. 2015 Supp. 60-259(a). A ruling on a motion for new trial will not be disturbed on appeal except upon a showing of abuse of discretion. *Miller*, 295 Kan. at 684-85. Further, when a party challenges a jury verdict for insufficiency of evidence or as being contrary to the evidence, it is not the function of the appellate court to reweigh the evidence or pass on the credibility of the witnesses. When considered in the light most favorable to the prevailing party, if the evidence supports the verdict, the appellate court should not intervene. *Unruh v. Purina Mills*, 289 Kan. 1185, 1195, 221 P.3d 1130 (2009). "It is of

17

no consequence that contrary evidence might have supported different findings if believed by the jury." 289 Kan. at 1196.

K.S.A. 2015 Supp. 50-101 states, in relevant part:

"Except as provided in K.S.A. 2015 Supp. 50-163, and amendments thereto, a trust is a combination of capital, skill, or acts, by two or more persons, for either, any or all of the following purposes:

"*First*. To create or carry out restrictions in trade or commerce, or to carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state."

Even a reasonable restriction may be unlawful. See *O'Brien v. Leegin Creative Leather Products. Inc*., 294 Kan. 318, 349, 277 P.3d 1062 (2012).

Idstrom contends the undisputed evidence shows Alliance Radiology, which was formed by four competing radiology groups in 1998, is an unlawful trust because the competing groups are now "Divisions" of Alliance Radiology allocating geographic "turfs" and enforcing exclusive contracts. Idstrom also argues Alliance Radiology was not a single entity and its corporate formalities do not exempt it from antitrust law. However, we find it would be contrary to long-standing Kansas law to address these arguments because, when the evidence is viewed in the light most favorable to Alliance Radiology—the prevailing party—the jury's verdict is supported.

Dr. Anthony testified the impetus for starting Alliance Radiology was to create economies of scale in billing services; health, dental, and malpractice insurance; share administrative services; improve reimbursement rates; and to recruit and retain qualified radiologists. Dr. Anthony also testified Alliance Radiology did not have an unwritten rule regarding the allocation of business. Instead, he indicated any new business came to the Board and "if it was new business and there was interaction between more than one

division, those divisions got together, decided how they could cover it, and brought it to the [B]oard." Dr. Anthony also testified hospitals encouraged exclusive contracts because the hospitals "wanted the same faces and the same names and the same people to be at their institution and show up every morning."

Viewed in the light most favorable to the prevailing party, the record contains evidence supporting the jury's verdict that Alliance Radiology was not a trust as defined by K.S.A. 50-101 *et seq.* The district court did not abuse its discretion when it denied Idstrom's motion for new trial.

*Jury Instruction 25 was correct.*

Idstrom also objects to one of the jury instructions. The standard of review when addressing challenges to jury instructions is based upon the following analysis:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).' [Citation omitted.]" *Foster v. Klaumann*, 296 Kan. 295, 301-02, 294 P.3d 223 (2013).

Idstrom argues he "objected at length" to Jury Instruction 25. However, before beginning the instruction conference, the district court informed the parties the instruction conference would be handled in two parts: argument regarding the language of the proposed instructions and an opportunity to object. After finalizing the language of the

proposed instructions, the district court presented the instructions and "allow[ed] both sides to state any objections that they may have to the instructions." When the district court asked if either party objected to Jury Instruction 25 as written, Idstrom failed to object. Further, although Idstrom indicated he disagreed with the language of Jury Instruction 25 many times, he did not object to its language at any of the places cited in his brief. Accordingly, this court reviews for clear error. Jury Instruction 25 stated:

> "Plaintiff Dr. Idstrom may recover damages from the individual defendants for violation of the Kansas Restraint of Trade Act only if you find that Plaintiff Dr. Mark Idstrom has proven:
>> "(1) That Alliance is a Trust (as instructed in Instruction 21);
>> "(2) That one or more of the individual Defendants formed or are interested, either directly or indirectly, in Alliance; and
>> "(3) *The actions of the individual defendants were separate from the actions of defendant Alliance Radiology.*
>> "You may find that an individual was or is interested in Alliance because he or she served Alliance as a principal, agent. representative, consignee or otherwise." (Emphasis added.)

Citing *Burlington Industries v. Milliken & Co.*, 690 F.2d 380 (4th Cir. 1982), Idstrom contends inclusion of the italicized language was error because antitrust law dictates joint and several liability. The Directors contend that even if Instruction 25 was erroneous, the error was harmless because the jury determined Alliance Radiology was not a trust.

The Directors' argument is more persuasive. Jury Instruction 25 required Idstrom to prove Alliance Radiology was a trust before he could recover damages from the individual defendants for violations of the Kansas Restraint of Trade Act. Jury Instruction 21, which Jury Instruction 25 referenced, stated:

"*Your verdict must be for Dr. Idstrom on his claim under the Kansas Restraint of Trade Act against Defendant Alliance if Dr. Idstrom proves Defendant Alliance Radiology is a trust.* A trust is a combination of capital, skill, or acts, by two or more persons, for either, any or all of the following purposes:

"To create or carry out restrictions in trade or commerce, or aids to commerce, or to carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws or this state.

"Any such combinations are hereby declared to be against public policy, unlawful and void.

"Dr. Idstrom has to prove that he was injured.

"Plaintiff only has to prove that one or more of the acts alleged is more probably true than not. It is not necessary that each of you agree upon a specific claim." (Emphasis added.)

When the jury found Alliance Radiology had not violated the Kansas Restraint of Trade Act, it was reasonable to conclude the jury did not find Alliance Radiology was a trust. As a result, even despite the alleged error, the jury could not find the individual defendants liable under the Kansas Restraint of Trade Act because Idstrom did not prove Alliance Radiology was a trust.

In his reply brief, Idstrom contends the jury "may have concluded that Alliance [Radiology] was a trust, but that Dr. Idstrom was not damaged by it" or "could have found that Alliance [Radiology] was a trust but ceased its illegal activities prior to [the] erroneously-determined limitations period [May 8, 2010], irrespective of whether Dr. Idstrom was damaged."

Here, the record reflects Verdict Form A clearly differentiates between a violation of the Kansas Restraint of Trade Act and whether Idstrom was injured or damaged by the violation. Question 1 of Verdict Form A asked: "Do you find that one or more Defendants violated the Kansas Restraint of Trade Act as instructed in Instructions?" Had the jury found any defendant violated the Kansas Restraint of Trade Act, Question 3

21

of Verdict Form A asked the jury to determine whether Idstrom was injured or damaged by the violation. Second, the district court instructed the jury it could consider events occurring prior to the statute of limitations to determine whether it was an illegal trust. Even if the inclusion of the complained-of language in Jury Instruction 25 was error—an argument we do not agree with—we find the error did not affect the jury's verdict and was harmless.

*The statute of limitations barred antitrust claims arising prior to May 8, 2009.*

Before trial, the district court granted summary judgment against any antitrust claims that arose before May 8, 2009, based on the statute of limitations.

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015) (quoting *Stanley Bank v. Parish*, 298 Kan. 755, Syl. ¶ 1, 317 P.3d 750 [2014]).

Idstrom argues the district court erred when it determined damages prior to May 8, 2009, are barred because there was no factual authority for any exception to toll the 3-year statute of limitations period. See K.S.A. 60-512.

In the district court's order on summary judgment, the district court adopted the Directors' statements of uncontroverted fact Nos. 1-8, 10-23, 25-37, 39-43, 45-47, 51-53,

22

and 64-68 by reference.  The district court also adopted Idstrom's statements of fact No. 69-82, 84-98, and 100.  While Idstrom's response to the motion for summary judgment is included in the record on appeal, the Directors' motion for summary judgment and its supporting memorandum are not included.

Since Idstrom did not include the Directors' motion for summary judgment, it is impossible to determine whether reasonable minds could draw different conclusions from the evidence. The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).  Idstrom's claim fails; he failed to designate a record sufficient to support this claim.

*The district court correctly denied posttermination damages.*

Idstrom argues the district court erred when it "dismissed Dr. Idstrom's posttermination damages for breach of fiduciary duty essentially *sua sponte* at summary judgment."

As discussed above, Idstrom did not include the Directors' motion for summary judgment or its supporting memorandum in the record on appeal.  The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. *Friedman*, 296 Kan. at 644-45. Because the motion for summary judgment is not included in the record on appeal, it is impossible to determine whether the district court improperly raised this issue *sua sponte* (assuming that may be error) or that the district court improperly granted part of the Director's motion for summary judgment. With a deficient record, Idstrom's claim on this point fails.

*Idstrom agreed to be controlled by the pretrial order dated April 10, 2014.*

Idstrom argues the district court erred when it denied his motion to amend the petition to include a claim for punitive damages because he asserted punitive damages in the pretrial order and timely sought to amend his petition to include the claim. A district court's ruling regarding an amendment for punitive damages is reviewed for an abuse of discretion. *Adamson v. Bicknell*, 295 Kan. 879, 887, 287 P.3d 274 (2012).

K.S.A. 60-3703 governs the procedure for the amendment of a pleading to claim punitive damages, which states:

> "No tort claim or reference to a tort claim for punitive damages shall be included in a petition or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim pursuant to K.S.A. [2015 Supp.] 60-209, and amendments thereto. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed on or before the date of the final pretrial conference held in the matter."

Idstrom contends the district court "injected a procedural requirement that does not exist" in order to deny his motion for leave to include a punitive damages claim. Idstrom's claim lacks merit. Here, Idstrom filed his motion to amend his pleadings to include punitive damages 2 days before the final pretrial conference on April 29, 2015. However, the district court relied on the April 10, 2014, pretrial order—which the parties agreed was to be the final pretrial order and would have been had the trial date not been continued—to deny Idstrom's motion because Section 6 of the April 10, 2014, pretrial order, entitled Amendment to Pleadings, clearly stated: "None." The district court held:

"[T]he parties are bound by the agreement that they made at the March 27, 2015[,] hearing when they agreed that the April 10, 2014[,] Pretrial Order was the final Pretrial Order. [Idstrom] is bound that no amendments to the pleading were to be made and his subsequent motion to amend is accordingly denied."

Throughout the proceedings, the district court consistently held the parties were bound by the April 10, 2014, final pretrial order. A reasonable person could take the view adopted by the district court. The district court did not abuse its discretion when it denied Idstrom's motion to amend his pleadings to include a claim for punitive damages.

Affirmed.